# UNITED STATES DISTRICT COURT

# WESTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| CALVIN HORTON, SR. | CIVIL ACTION NO. 09-0125 |
| VS. | SECTION P |
| | JUDGE MELANÇON |
| SECRETARY JAMES LeBLANC, ET AL. | MAGISTRATE JUDGE HILL |

## REPORT AND RECOMMENDATION

Before the court is a Motion for the issuance of a Preliminary Injunction filed by *pro se* plaintiff Calvin Horton, Sr. in connection with the above captioned civil rights lawsuit. [rec. doc. 8]. In his original § 1983 Complaint, plaintiff names LDOC Secretary James M. LeBlanc, South Lousiana Correctional Center (SLCC) Warden Viator, SLCC Major Striedel and SLCC Major Evans as defendants. In his Amended Complaint, he adds Avoyelles Correctional Center (ACC) Warden Lynn Cooper, ACC Director of Nursing Mrs. LaCombe and ACC Dr. Vajnar. In both Complaints, plaintiff complains that he was denied appropriate medical care during his incarceration at SLCC and thereafter at ACC following his July 23, 2008 transfer to that facility. Plaintiff seeks damages and injunctive relief.

In his Original Complaint, plaintiff alleges that in 2003 or early 2004 he accidentally dislocated both of his kneecaps, and that at the present time Nurse Michelle Maxie and Dr. Tassin of SLCC have diagnosed plaintiff as suffering from arthritis. After his July 23, 2008 transfer to ACC, plaintiff was examined by a nurse to whom he

provided the following medical history, including that the "off set of my left knee cap had torn the elastic muscle between my outer and upper thigh and groin area and a tremendous amount of pressure was on my lower spinal cord, and above my right knee cap the quadriceps muscles are torn about twelve inches, and my right should blade the elastic muscles torn badly and severe nerve damage broken bones in hands." Plaintiff was examined by ACC Dr. Vagnar and has had  x-rays of his left knee, lower back, right shoulder, and both hands. [rec. doc. 1].

Plaintiff has made both routine and emergency sick calls at ACC complaining of severe muscle spasm in his lower and upper neck, shoulders, and lower back which he contends is exacerbated by the sound of whistling or other high frequencies.  When his complaints were not resolved to his satisfaction, plaintiff complained to security, requesting to be transferred to another location where he could avoid the guards' whistle blowing; his request was denied.  Plaintiff also complains that his requests to fellow inmates, that they refrain from whistling, have gone unheeded.  He prayed to be "sent to a hospital to be thoroughly examined, X-ray [sic], MRI, and be administered the proper medical treatment and care . . .", and also prayed for an investigation, a  restraining order and a proper duty status, along with monetary damages. [rec. doc. 1].

With respect to his original request for a restraining order, plaintiff previously filed an "Emergency Motion for Preliminary Injunction" seeking immediate medical treatment based upon complaints that he suffers from muscle spasms when he hears

whistling. [rec. doc. 4]. The Court denied his motion on March 18, 2009. [rec. doc. 5].

By this Motion, plaintiff seeks the issuance of a preliminary injunction enjoining the defendants from "using x-rays to diagnose debilitating neuromuscular conditions" and requiring the defendants to take him "to be screened, seen and diagnosed by a neurologist." [rec. doc. 8]. In support of his request, plaintiff refers to his Amended Complaint in which he alleges that "since the filing of the complaint the plaintiff has determined that x-rays go through all body tissues to show only skeletal bone details but not neuromuscular infections which if left unattended will allow irreparable damage" and that proper diagnosis of such conditions is made with "computer aided tomography, magnetic resonance imaging or postion [sic] emission tomography", and therefore seeks the court to order the defendants to send him "to a neurologist equipped with modern medical technology for proper screening to identify, diagnose and prescribe adequate neuromuscular treatment." [rec. doc. 6].

This matter was referred to the undersigned for review, report, and recommendation in accordance with the provisions of 28 U.S.C. § 636 and the standing orders of the court.

## LAW AND ANALYSIS

A movant for a preliminary injunction must demonstrate each of the following: 1) a substantial likelihood of success on the merits; 2) a substantial threat that failure to grant the injunction will result in irreparable injury; 3) the threatened injury outweighs

any damage that the injunction will cause to the adverse party; and 4) the injunction will not have an adverse effect on the public interest. *Women's Med. Ctr. of Northwest Houston v. Bell,* 248 F.3d 411, 419 at fn. 15 (5th Cir.2001) citing *Hoover v. Morales*, 164 F.3d 221, 224 (5th Cir. 1998). "An injunction is an extraordinary remedy and should not issue except upon a clear showing of possible irreparable harm." *Lewis v. S.S. Baune,* 534 F.2d 1115, 1121 (5th Cir.1976). Indeed, this finding is the "most essential" prior to issuance of a preliminary injunction. *Id.* The movant must prove all four elements and failure to prove any one of them will result in denial of the motion. *Enterprise Intern., Inc. v. Corporacion Estatal Petrolera Ecuatoriana,* 762 F.2d 464, 472 (5th Cir.1985). Plaintiff fails to satisfy the second and most essential element, a substantial threat that failure to grant a preliminary injunction will result in irreparable injury.

Plaintiff fails to allege sufficient facts to show that he will suffer immediate, irreparable injury if a preliminary injunction is not granted. Plaintiff conclusorily claims that he suffers from a "debilitating neuromuscular condition" which he believes is exacerbated by whistling. There is no competent evidence in the record before this court evincing that a failure to immediately act with respect to plaintiff's alleged condition will result in any injury, much less irreparable injury. To the contrary, plaintiff's pleadings demonstrate that he has complained of his physical condition (diagnosed as arthritis) since 2003 after suffering his initial accident. Plaintiff's pleadings also demonstrate that although he believes examination by a specialist (neurologist) and additional more advanced screening methods are required, plaintiff has received extensive medical examination and treatment from prison authorities. He merely disagrees with the

treatment thus far rendered and the medical diagnosis given. These complaints will be addressed in the instant civil action. Indeed, the issues which are the subject of this separate Motion are the same issues raised in plaintiff's Complaint and Amended Complaint which will be ultimately decided by this court as the case proceeds. Thus, plaintiff's separately filed Motion is duplicative and repetitive. Plaintiff cannot evade the orderly disposition of his claims by filing a separate motion for injunctive relief.

Plaintiff is warned, however, that his allegations do not state claims for relief which may be granted in this civil rights action. To state a claim under the Eighth Amendment, the medical care must be "sufficiently harmful to evidence deliberate indifference to serious medical needs." *Estelle v. Gamble*, 429 U.S. 97, 106, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976). The fact that the medical care given is not the best that money can buy does not amount to deliberate indifference. *Mayweather v. Foti*, 958 F.2d 91 (5th Cir. 1992); *Norton*, 122 F.3d at 292. The constitution does not command that prison inmates be given the kind of medical attention that judges would wish to have for themselves; it prohibits only deliberate indifference to serious medical needs. *Mayweather*, 958 F.2d at 91; *Ruiz v. Estelle*, 679 F.2d 1115, 1149 (5th Cir. 1982), *amended in part and vacated in part on other grounds*, 688 F.2d 266, 267 (5th Cir. 1982). Although treatment by a neurologist and advanced diagnostic scanning methods (as opposed to x-rays) might be desirable, it is in no way constitutionally required. Indeed, others who suffer from similar ailments are never seen or treated by any physician, much less a specialist, and never undergo CAT, MRI or PET scans to aid in their diagnosis or treatment.

Moreover, to the extent that plaintiff disagrees with the treatment rendered, it is well settled that disagreement with medical treatment does not amount to a constitutional violation. *Norton v. Dimazana*, 122 F.3d 286, 292 (5th Cir. 1997); *Johnson v. Treen*, 759 F.2d 1236, 1238 (5th Cir. 1985); *Calloway v. Smith County*, 991 F. Supp. 801 (E.D. Tex. 1998); *Varnado v. Lynaugh*, 920 F.2d 320, 321 (5th Cir. 1991). Likewise, incorrect diagnosis or unsuccessful treatment is insufficient to establish deliberate indifference sufficient to state a constitutional claim. *Johnson*, 759 F.2d at 1238-39; *Domino v. Texas Dept. of Criminal Justice*, 239 F.3d 752, 756 (5th Cir.2001).

For the above reasons, **IT IS RECOMMENDED** that plaintiff's Motion for the issuance of a Preliminary Injunction [rec. doc. 8] should be **DENIED.**

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Fed.R.Civ.Proc. 72(b), parties aggrieved by this recommendation have ten (10) business days from service of this report and recommendation to file specific, written objections with the clerk of court. A party may respond to another party's objections within ten (10) days after being served with a copy thereof.

**Failure to file written objections to the proposed factual finding and/or the proposed legal conclusions reflected in this Report and Recommendation within ten (10) days following the date of its service, or within the time frame authorized by Fed.R.Civ.P. 6(b), shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the District Court, except upon grounds of plain error. See *Douglas v. United Services Automobile Association,* 79**

F.3d 1415 (5th Cir. 1996).

**THUS DONE AND SIGNED** in Chambers at Lafayette, Louisiana, this 8th day of April, 2009.

_C. Michael Hill_
C. MICHAEL HILL
UNITED STATES MAGISTRATE JUDGE